BRIGHT B. OGG ET AL. V. HARTWIG C. SCHULTZ.

FILED JANUARY 23, 1901.   No. 9,298.

1. **Fraudulent Transfer: EVIDENCE.** Evidence examined, and *held* to establish vendor's disposition of his stock of merchandise to be with intent to hinder, delay and defraud his creditors, and that knowledge of such fraudulent intent was imputed to the vendee.

2. ———: VOID SALE. The conveyance by a failing debtor of practically all his property, not exempt, to one of his creditors in satisfaction of his debt, the difference between the amount of the debt and the agreed value of the property being evidenced by the note of the vendee in favor of the vendor, with knowledge on the part of the vendee that the sale will result in hindering, delaying and defrauding the other creditors of the vendor in the collection of their debts, is void as to such other creditors. *Switz r. Bruce*, 16 Nebr., 463, and *Henney Buggy Co. v. Ashenfelter*, 60 Nebr., 1, followed.

ERROR from the district court for Fillmore county. Tried below before HASTINGS, J. *Reversed.*

*John Barsby* and *Lodowick F. Crofoot*, for plaintiffs in error.

*Charles H. Sloan* and *James W. Christie*, contra.

HOLCOMB, J.

One Henry Mohr conducted a small jewelry store in Exeter, Nebraska, his stock of goods aggregating in value $800 or $900. At about the time of the transaction out of which the suit grew he was owing on his stock of goods for merchandise some $600 or $700. Mohr was possessed of no other property save his exempt homestead. From the evidence it is made to appear that

Mohr is a nephew of the defendant in error, Hartwig C. Schultz, who reared him from childhood almost as a member of his family. The uncle had advanced to his nephew various sums of money, aggregating $400; these advances covering a period from 1884, when he let him have $50 to come from his home in Germany to this country, to 1891, when $100 was advanced to him to take up a note on which the uncle was liable as surety. In 1884 $150 was given or loaned to buy jeweler's tools, and in 1888 $100 was advanced, which was invested in a homestead residence property in the village in which he was doing business. In November, 1895, Mohr, becoming somewhat uneasy regarding his commercial indebtedness, had, as alleged, a settlement with his uncle and gave, as he claims, a note for $600, the same being for the $400, which he had received as before mentioned, and $200, as interest on the several advancements; and it was then agreed that if Mohr was pressed for payment on sums he owed for goods purchased, he was to first prefer and secure the indebtedness as aforesaid to his uncle. In the latter part of January, 1896, the plaintiff in error, who is a creditor of Mohr in the sum of about $500, undertook to secure payment or security for the same, which, after some negotiations, resulted in Mohr giving to his uncle a bill of sale for his entire stock of goods, receiving in consideration therefor the note theretofore given to his uncle, of which mention has been made, and a note executed by his uncle in his favor for $200. The goods were valued at $800. No change of possession was had, save a nominal one, Mohr continuing, as he claims, as the agent of his uncle, who, by the transaction narrated, claimed to be the owner of the property. Proceedings in attachment were instituted and the property attached as belonging to Mohr. A suit for conversion was thereupon commenced by Schultz, resulting in a judgment in his favor, from which, by proceeding in error, the case is here for further consideration.

At the time of the alleged sale to his uncle, no invoice was taken, the goods being sold as stated as of the value of $800, the consideration being the surrender of the note given by Mohr for $600, and the remainder of the purchase price, $200, being evidenced by a note in Mohr's favor executed by his uncle for that amount. It also appears that about $100 worth of goods were taken by Mohr at the time, and some secret disposition made thereof, the exact nature of which is unknown. At the time of the execution of the $600 note it appears that some arrangements were made with an attorney residing in Exeter, whereby he was to look after the interests of Schultz, and secure the payment of the note whenever it seemed necessary to do so in order to secure or obtain payment in preference to other demands. At the time of the alleged sale Mohr represented both himself and his uncle, with the assistance of the attorney, who acted for both of them. It is quite evident, as we view the record, and relying on the evidence of the plaintiff alone, that the object of Mohr was not only to give his uncle a preference and satisfy his claim, but also to hinder and delay, if not actually defraud, his other creditors. His secretion of a part of the stock, and attempted disposition of all that remained, can justify no other inference than that he had determined to place his property beyond the reach of his commercial creditors. Had the uncle been satisfied with the payment or security of his indebtedness, which for the purposes of this case we may concede to be a *bona fide* and just one, it is not to be doubted that he would be protected, and the transfer could not be avoided on that account. But when he puts himself in the attitude of a general volunteer purchaser of all the stock of the debtor, which was appreciably greater in value than the debt which he held, executing his note for $200 to cover the excess, his action must then be gauged by the general rule applicable to sales and transfers of property with intent to hinder, delay and defraud creditors; and if the purchaser had knowledge of such fraudulent in-

tent, or such facts as would put a reasonably prudent man on inquiry, such sale is, under well settled principles and repeated decisions of this court, fraudulent and void as to the creditors of such debtor. In this case the purchaser not only had knowledge of facts and circumstances which would put a reasonably prudent man upon his inquiry, but actually participated in the fraudulent intent of the seller, by reason of the fact that the seller and his agent acted for him and on his behalf, and with full knowledge of all the circumstances attending the fraudulent transfer. The case, we think, comes squarely within the rule announced in *Henney Buggy Co. v. Ashenfelter*, 60 Nebr., 1, and *Switz v. Bruce*, 16 Nebr., 463, and, without further elaboration, we must hold that the findings and judgment are not supported by sufficient evidence, and are contrary to the evidence in the case, and opposed to the law as announced in the cases cited.

The judgment must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.